FILED
IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2005 NOV 30  P 12: 13

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION NO.
05-10967-RCL

|  |  |
|---|---|
| ARMOR SYSTEMS INTERNATIONAL, INC. | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| FIRST CHOICE BODY ARMOR & EQUIPMENT, INC. | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER REGARDING TELEPHONIC DEPOSITIONS

### FACTS

1.    Sometime in the Spring of 2004, Armor Systems International, Inc. ("ASI") promoted its adhesive and other protective armor technology to First Choice Body Armor & Equipment, Inc. ("FCA") and held itself out as having expertise in armoring vehicles.

2.    On April 30, 2004, FCA and ASI entered into a non-disclosure agreement regarding ASI's self-adhesive protective armor technology.

3.    Based upon several discussions, understandings and commitments by ASI to FCA, FCA bid on a contract to

provide sixteen (16) armored Ford Excursion sports utility vehicles to Kellogg Brown and Root, Inc. ("KBR") for service in Iraq.

4.     FCA furnished ASI a detailed proposed contract for services under the KBR bid and for similar, future opportunities.  Said proposal included the particular specifications for the KBR job.  The proposed contract was never executed.  Nevertheless, FCA accepted the bid award from KBR, expressly relying on ASI's assurances that ASI could supply the components and perform the work needed to fully and properly armor the sixteen (16) Ford Excursions in accord with the KBR specifications and industry practice.

5.     FCA issued to ASI Purchase Order No. 774 on October 12, 2004.  ASI issued an invoice on said Purchase Order on October 13, 2004.

6.     Based on ASI's assurances, acceptance of funds and acknowledgement of the purchase order, FCA acquired at its own expense sixteen (16) Ford Excursion vehicles.  ASI then proved unwilling to perform, evidently due to a far more substantial order it received from a government contract.  FCA was forced to threaten action on or about

2

February 1, 2005 if ASI failed to perform under the
Purchase Order.

7.    In response to FCA's demand that ASI perform,
ASI's counsel conveyed promises as to expeditious
performance.  (See letter of February 2, 2005, attached as
Exhibit "A.")  ASI ultimately sent four employees to
Massachusetts to begin installing the armor kits to the
Ford Excursions pursuant to Purchase Order No. 774.

8.    The work was performed at Rodman Ford located in
Foxboro, Massachusetts.  ASI failed to perform as required
on Purchase Order No. 774 and was negligent in its
application or installations of its components to FCA's
Ford Excursions.  By way of example and not limitation,
said deficiencies included the following, all of which
hindered production, delayed delivery and damaged FCA:

> **a.    Armor kits were incorrectly designed for
> earlier model of Ford Excursion and not the
> 2005 models being outfitted.**

The project involved installation of armor kits on
2005 Ford Excursions.  However, the armor kits sent by ASI
to Massachusetts were based on an older model Ford
Excursion.  Consequently, ASI was constantly forced to cut
armor or create a new armor design on the spot which
delayed completion of the project.

3

### b. Door Panels.

Door panels were not properly fabricated and needed to be re-cut to fit the doors of 2005 Ford Excursions.

### c. A, B and C Pillar Protection.

A, B and C pillar armor was incorrectly installed. Additionally, in the process of installing the A, B and C pillar protection, ASI scratched windows on all eight (8) vehicles which ASI worked on.

### d. Wheel Wells.

KBR specifications required armored wheel wells. ASI never designed armor for the fenders. ASI's personnel made a design on cardboard on site and FCA had to acquire the steel to make the fenders.

### e. Grills.

ASI only supplied grills for two vehicles. ASI was unable to procure additional steel, so ASI requested FCA to fabricate the steel for the grills for the remaining vehicles.

### f. Roof Protection

Roof protection caps were not timely delivered by ASI. Additionally, none of the ASI personnel knew how to install the roof caps. Thus, James Merlo of FCA had to install the roof caps.

4

### g.   Armored Brush Guard

ASI initially installed the wrong armored brush guard on two vehicles. Consequently, ASI had to order new brush guards which caused delays. When the new brush guards came in, there were only steel plates for radiator protection for two vehicles. When confronted about this, Jim Henry stated that ASI didn't need to install steel protection for the radiators on the remaining vehicles. FCA insisted that the remaining vehicles be fitted with radiator protection.

### h.   Door Hinges

ASI brought the wrong door hinges to install. As a result, ASI had to weld original door hinges to reinforce them.

### i.   Door Checks

ASI threw out the Ford factory door checks so they had to fabricate their own.

### j.   Rear Partitions

The KBR specifications required no gaps in armor. ASI left a five inch gap between the rear divider and the roof in the first two vehicles. As a result, FCA had to purchase custom steel and hire Auto Maintenance Center in Houston, Texas to correctly install the rear partitions. The custom steel had to be sent via next day air to Auto

5

Maintenance Center.  FCA personnel covered the gaps for the other six vehicles.  With respect to four of these six vehicles, the interiors had to be removed before the gap between the rear divider and the roof could be filled.

### k.  **Floor Armor**

KBR specifications required armoring of entire floor area with no gaps and sufficient overlapping with other opaque areas within the passenger compartment. Nevertheless, ASI left gaps in floor armor in the first two vehicles.  After rejection by KBR, Auto Maintenance welded steel pieces to cover the gaps.

### l.  **Damage to Vehicles**.

Cosmetic repairs needed to be made as a result of ASI's shoddy work.  The interiors of all eight vehicles were heavily damaged.  There were burn holes in seats, headliners, visors, dashboards, door pads, and the windows had slag on them.  FCA hired Marks Auto Upholstery in Foxboro, Massachusetts to repair burned items.  ASI damaged windows on all eight vehicles it worked on, which required window replacement.  ASI also damaged or threw away many Ford factory parts from the first four vehicles, which had to be replaced.

9.   According to its written commitment of February
2, 2005, ASI was to have the "first [presumably four] FCA
vehicles...completed by Friday, February 11, 2005."
(Exhibit "A.")   This did not occur.

10.   By late March, ASI had only partially completed
two of the Ford Excursions.   The two partially completed
Ford Excursions were rejected by KBR.   FCA undertook to
finish the work and retained the services of an auto body
shop in Houston, Texas to repair damage to the vehicles.

11.   FCA was forced to hire CSI Armoring, located in
Miami, Florida to install armor kits on vehicles 9 through
16.   All of the vehicles completed by CSI were accepted by
KBR.

### ARGUMENT

## A.   Colin Henry should travel to Boston for deposition.

12.   Colin Henry was one of the ASI employees who
traveled to Massachusetts and was involved with the actual
installation of the armor kits on the vehicles.   He was on-
site at Rodman Ford in Foxboro, Massachusetts for
approximately three to four weeks.   Colin Henry has
personal knowledge of the numerous problems identified
above in paragraph 8 (a-l).   The defendant believes it will
take most of a day to complete Colin Henry's deposition.

13.   Colin Henry is the son of Jim Henry and was in a leadership role when his father was not present.   Several times during the project, Jim Henry would disappear for days without telling anyone where he was going or when he was returning.

14.   Notably, ASI avoids discussing the extent of Colin Henry's involvement in the project in its motion by restraining itself to a single sentence regarding Colin Henry's involvement.[1]

15.   Upon information and belief, Colin Henry was the individual at ASI who designed the armor kits to be installed on the vehicles.   The extent of Colin Henry's involvement and importance to the Ford Excursion project were underscored by ASI employee, Brian Cain, who complained during the first couple of weeks of the work that they needed Colin Henry to be there because he was the one who designed the project.

16.   Throughout the approximate three to four weeks that Colin Henry was on-site in Foxboro, he had numerous conversations with Edward Dovner, the owner of FCA and FCA employees, James Merlo and Ryan Dovner.   There were daily

---

[1] "Colin Henry was one of the ASI employees on the installation team in Brockton and helped create some of the armor templates."  (Plaintiff's Memorandum, p. 7.)

8

discussions regarding many aspects of the work, including but not limited to, ASI's lack of coordination of work; ASI having inadequate tools and equipment; ASI working from the wrong armor design; the necessity of creating a new armor design for the 2005 Ford Excursion; delays in production; the myriad of problems created by ASI's failure to complete the work according to KBR specifications; and ASI personnel damaging the vehicles.

17.   In its answers to interrogatories, ASI concedes that "during February and March 2005, Colin Henry spoke with one or more First Choice representatives, most often Ryan Dovner and/or Jim Merlo, on essentially every working day regarding many aspects of the Ford Excursion project...." (See Plaintiff, Armor Systems' Response to First Set of Interrogatories, Answer No. 8(c), p. 9, attached as Exhibit "B.")

18.   Colin Henry is among the individuals listed in ASI's Initial Disclosures as someone who possesses discoverable information.  In its Initial Disclosures, ASI states that Colin Henry would have knowledge of "installation of the armor kits for the Project; First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the

9

Project; First Choice's removal of eight unmodified Ford Excursions from the work site." (ASI's Initial Disclosures, ¶A3, p. 2, attached as Exhibit "C.")

## B. Bob Marciano should appear in Boston for deposition.

19. Bob Marciano was FCA's main contact person at ASI during preliminary discussions and throughout the entire contract negotiation process. Mr. Marciano was the individual at ASI who persuaded FCA to contract with ASI for installation of armor for the project.

20. On numerous occasions, Mr. Marciano made representations about ASI's supposed expertise in installation of armor on vehicles. Mr. Marciano related how ASI had completed a government contract installing armor on Humvees that were to be used to escort the President of the United States. He represented that ASI had completed a number of other substantial government contracts for installation of armor on vehicles. He also represented that ASI had a number of pending bids on other substantial government and private contracts for vehicle armor installation.

21. Mr. Marciano initially represented to FCA that two ASI personnel would be able to complete four (4) vehicles per week. Later, Mr. Marciano represented that

10

two ASI personnel would only be able to complete three (3) vehicles per week. Then, Mr. Marciano retreated once again on cycle times for completion of the work and stated that two ASI personnel would only be able to complete two (2) vehicles per week.

22. Mr. Marciano and Edward Dovner communicated by telephone two to five times per week for an approximate two month period during preliminary discussions and contract negotiations.

23. Since Mr. Marciano is a contracting officer at ASI, FCA believes that he has discoverable knowledge regarding other very substantial government contracts which pre-occupied the resources of ASI so that it was either unwilling or unable to begin commencement of work on the Ford Excursion project.

24. ASI correctly points out in its motion that Mr. Marciano was not listed in ASI's Initial Disclosures as likely to have knowledge of discoverable information. Given Mr. Marciano's knowledge of the project, the defendant submits that he should have been listed. FCA, in its Initial Disclosures, did list Mr. Marciano as a person likely to have discoverable knowledge. (See Initial Disclosures, attached as Exhibit "D.")

11

## C.   Terry Billedeaux should appear in Boston for deposition.

25.   Terry Billedeaux traveled to the Boston area in October 2004 to meet with FCA about the Ford Excursion project and to discuss the potential for other future business relations regarding: (1) vehicle armor installation on civilian and military vehicles; and (2) ASI distribution of body armor vests manufactured by FCA.   The meeting took place at FCA's place of business in Brockton, Massachusetts.   The meeting lasted a half a day.   Also discussed during the meeting was ASI's lack of a test firing range and potential future use of FCA's test firing range by ASI.

26.   Since Mr. Billedeaux is the former President of ASI, FCA believes that he has discoverable knowledge regarding other very substantial government contracts which preoccupied the resources of ASI so that it was either unwilling or unable to begin commencement of work on the Ford Excursion project.

27.   Again, ASI correctly points out that Mr. Billedeaux was not listed as a witness likely to have discoverable knowledge in its Initial Disclosures. However, FCA did list Mr. Billedeaux in its Initial Disclosures.

12

28.  Additionally, FCA contends that if Massachusetts is not too far or costly for Mr. Billedeaux to travel to solicit business, then it should not be too costly for him to appear for a deposition in Massachusetts in an action which ASI commenced.

**CONCLUSION**

Accordingly, for the above stated reasons, the plaintiff's motion for a protective order regarding the telephonic depositions should be denied.

> FIRST CHOICE ARMOR &
> EQUIPMENT, INC.
> By its attorney,
>
> John A. Leone
> BBO No. 567416
> O'CONNOR & ASSOCIATES, LLC
> 100 State Street, 4th Floor
> Boston, MA 02109
> (617) 723-7201

DATED:  November 30, 2005

**CERTIFICATE OF SERVICE**

I, John A. Leone, hereby certify that a true copy of this document was served by prepaid First Class U.S. Mail upon all counsel of record on November 30, 2005.

John A. Leone

# EXHIBIT "A"





**STOEL RIVES** LLP

ATTORNEYS AT LAW

900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204
main 503.224.3380
fax 503.220.2480
www.stoel.com

February 2, 2005

STEVEN T. LOVETT
*Direct (503) 294-9364*
stlovett@stoel.com

## VIA FACSIMILE

Mr. David M. O'Connor
O'Connor & Associates
100 State Street, Fourth Floor
Boston MA 02109-2306

**Re:    Armor Systems International, Inc./First Choice Body Armor & Equipment, Inc.**

Dear Mr. O'Connor:

This firm represents Armor Systems International, Inc. ("ASI") generally and regarding the issues discussed in this letter in particular. Please direct all future communications to me.

I write in response to your February 1, 2005 letter on behalf of First Choice Body Armor & Equipment, Inc. ("FCA").

I understand that during a telephone conference this morning between Jim Henry of ASI and Edward Dovner of FCA the parties agreed that if ASI has four armor kits delivered to Massachusetts, starts installing them by Tuesday February 8, 2005 and the first FCA vehicles are completed by Friday February 11, 2005, FCA will not pursue the claims outlined in your February 1, 2005 letter or any other legal remedy against ASI.

Please let me know if FCA has a different understanding of the parties' agreement.

Finally, ASI disagrees with many statements in your letter. In light of the parties' coming to an agreement to resolve their differences on a business basis, however, ASI will not incur the time and expense to detail the disparities between your arguments and what ASI believes to be the case.

It is ASI's hope and expectation that in the future the parties will proceed in their mutual best interests.

Very truly yours,

Steven T. Lovett

cc:    Mr. Terry Billedeaux
       Mr. Ed Menteer
Portlnd3-1506820.1 0060162-00001

Oregon
Washington
California
Utah
Idaho

# EXHIBIT "B"

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARMOR SYSTEMS INTERNATIONAL, INC., a Washington corporation,<br><br>        Plaintiff,<br><br>     v.<br><br>FIRST CHOICE BODY ARMOR & EQUIPMENT, INC., a Massachusetts corporation,<br><br>        Defendant. | Civil Action No. 05-10967 RCL<br><br>PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES |

Pursuant to Federal Rule of Civil Procedure 33 and the Local Rule 33.1, Plaintiff Armor Systems International, Inc. ("ASI") submits the following responses and objections to Defendant's First Set of Interrogatories Propounded to Plaintiff.

ASI's responses are made to the best of its present knowledge, information and belief. Some responses are subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of current recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result through further discovery or investigation. ASI reserves the right to supplement or amend these responses based upon the discovery of additional documents or information.

Each of ASI's responses is made subject to its general objections set forth below and those objections are incorporated in each of the responses:

Page 1 -      PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES

## GENERAL OBJECTIONS

1.      ASI objects to providing documents or information that contain trade secrets or other highly confidential business information before entry of an appropriate protective order. Defendant has requested the production of documents containing competitively sensitive information the disclosure of which to Defendant or other third parties would be to ASI's competitive disadvantage. Until there is an appropriate protective order entered in this case limiting review of confidential information to the Court, counsel and disclosed independent experts, ASI will not produce or provide confidential information or documents in response to discovery requests.

2.      ASI objects to providing information or documents that are subject to the attorney/client privilege and/or work product doctrine.

3.      ASI objects to producing documents other than as they are kept in the usual course of business.

4.      ASI objects to each request to the extent there is information relevant to this dispute in the exclusive possession of Defendant and third parties.

5.      ASI objects to the definition of "project" to the extent it calls for a legal conclusion or assumes the existence of facts or obligations that do not exist.

6.      ASI objects to First Choice's use of the terms "you" and "your" without providing a definition. For purposes of its responses, ASI will interpret those terms as referring to Armor Systems International, Inc.

Page 2 -      PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
              INTERROGATORIES

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify yourself by stating your full name, social security number, address, date of birth, present employment position.

**RESPONSE TO INTERROGATORY NO. 1:** ASI states that its full name is Armor

Systems International, Inc. and otherwise objects to this Interrogatory as seeking information

inapplicable to a corporation.


**INTERROGATORY NO. 2:** Please identify each and every person whom you or your attorney expect to call as an expert witness at the trial of this case, including in your answer:

     a.    the subject matter on which each expert is expected to testify;

     b.    the substance of the facts and opinions on which each expert is expected to testify; and

     c.    a summary of the grounds for each opinion.

**RESPONSE TO INTERROGATORY NO. 2:** ASI objects as premature and to the

extent the Interrogatory seeks to impose burdens that are in addition to or inconsistent with the

provisions of Fed. R. Civ. P. 26(a)(2), (b)(4) and/or the pretrial scheduling order(s) entered by

the Court. Subject to and without waiving those objections, ASI will make expert disclosures

mandated by Fed. R. Civ. P. 26(a)(2) for witnesses retained to provide expert testimony in this

matter at the time, and in the manner, provided by the Rules and the order(s) of the Court.


**INTERROGATORY NO. 3:** Please identify and describe in full and complete detail every fact, witness and document supporting your claim that FCA breached a contract or other legal obligation running in favor of ASI.

**RESPONSE TO INTERROGATORY NO. 3:** ASI objects as vague, ambiguous and

overbroad and unduly burdensome. Discovery is just beginning and ASI cannot know at this

early stage every fact, witness and document that will ultimately support its claim. Subject to

Page 3 -     PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES

and without waiving those objections, in late summer or early fall 2004 First Choice informed ASI that First Choice would purchase from ASI 16 armor kits for Ford Excursions. As part of the project, ASI also agreed to be involved in installing the kits on three or four Excursions so that First Choice's installation team could see how it is done. On or about October 13, 2004, First Choice provided ASI with First Choice's purchase order Number 774 for armor protection packages for 16 Ford Excursions with a unit price of $29,175 which, after certain deductions First Choice took for itself, came to $28,000 per vehicle, or $444,000 total. The purchase order specified that ASI provide armor installers to work on the first four vehicles, as the parties had discussed. The purchase order also provided for a 25 percent deposit with the balance to be paid 30 days from completion. Eventually, First Choice provided the deposit of $110,900 required for ASI to begin work on the project.

First Choice was solely responsible for installation of the armor on vehicles 5 through 16. First Choice agreed to hire and pay for a crew of skilled laborers that would learn to install armor by assisting ASI on the first three or four vehicles. First Choice represented that it would hire a crew consisting of at least four mechanics or body shop workers from Rodman Ford, a Ford dealership in Foxboro, Massachusetts, and four to six similarly skilled workers that First Choice would engage especially for the project.

In early February 2005, the armor kits began to arrive in Foxboro, Massachusetts. On or about February 7, 2005 ASI's installation team, consisting of its chief technology officer and three skilled workers, arrived in Foxboro, Massachusetts. It was then that ASI discovered that only one skilled laborer, a Rodman Ford mechanic, had been hired by First Choice for the armor installation phase of the project.

Page 4 -      PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
              INTERROGATORIES

First Choice was to provide eight to ten skilled workers to assist with the armor installation on vehicles 1 to 4 and to install the armor on vehicles 5 to 16. Ultimately it provided two skilled workers or 20 percent to 25 percent of the labor force it committed to provide. By failing to provide the work force as agreed, First Choice slowed the armor installation process and delayed completion and delivery of the vehicles.

First Choice was to arrange with Rodman Ford for work space and storage areas adequate for the project. First Choice failed to do so and the installation team was forced into cramped quarters. First Choice's failure to arrange for adequate work and storage space meant that the project team did not have ready access to parts and equipment.

Accessories, electrical components and detailing for final inspection of the armored vehicles, all of which was First Choice's responsibility, was not coordinated at all, further delaying completion and delivery of the vehicles.

After ASI's team and the armor arrived in Foxboro, First Choice made changes to the makeup of the armor system on an almost daily basis. First Choice added about 20 pieces of armor not called for in the specifications. Each time First Choice added a new piece of armor, ASI's crew in Foxboro was forced to cut new designs and prepare templates to provide to a ballistic steel supplier.

The armor kits ASI supplied, when properly installed, were acceptable to First Choice's end customer.

By the week of March 21, 2005, the armor was fully installed on eight vehicles, largely due to the efforts of ASI's team which, at the urging of First Choice, stayed on after the first four vehicles were completed. That same week, First Choice removed vehicles 9 through 16 from the

Page 5 -   PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
           INTERROGATORIES

Rodman Ford premises, making it impossible for the installation team to install the armor kits that were then on-site and ready for use.

ASI believes vehicles 1 through 8 have been accepted by First Choice's end customer.

By Invoice Number 216 dated March 23, 2005, ASI demanded payment on the $333,000

balance of the contract for the armor protection kits. First Choice has refused to pay.

In addition to the facts stated above, ASI incorporates here its Initial Disclosures and,

pursuant to Fed. R. Civ. P. 33(d), will produce business records, including email, specifications,

purchaser orders, invoices, etc., from which parts of the answer to this Interrogatory may be

derived or ascertained. ASI's witnesses to one or more of the above events include each ASI

employee identified and described in Response to Interrogatory No. 8.

> **INTERROGATORY NO. 4:** Please identify and describe in full and complete detail every fact, witness and document supporting your claim that FCA breached an implied covenant of good faith and fair dealing and that said breach contributed to or caused your damages.

**RESPONSE TO INTERROGATORY NO. 4:** ASI incorporates here its entire

response to Interrogatory No. 3, including objections.

> **INTERROGATORY NO. 5:** Please identify and describe in full and complete detail every fact, witness and document supporting your claim of promissory estoppel for services.

**RESPONSE TO INTERROGATORY NO. 5:** ASI incorporates here its entire

response to Interrogatory No. 3, including objections.

Page 6 -    PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
            INTERROGATORIES

**INTERROGATORY NO. 6:** Please identify and describe in full and complete detail every fact, witness and document supporting your claim that FCA breached a contract or other legal obligation running in favor of ASI for skid plates and that said breach contributed to or caused your damages.

**RESPONSE TO INTERROGATORY NO. 6:** ASI objects as vague, ambiguous and overbroad and unduly burdensome. Discovery is just beginning and ASI cannot know at this early stage every fact, witness and document that will ultimately support its claim. Subject to and without waiving those objections, ASI responds as follows:

a)     Via Purchase Orders 939 and 1085, First Choice ordered from ASI skid plates for four Chevrolet Suburbans at a total price of $25,600.

b)     ASI delivered fully conforming skid plates.

c)     By Invoices 212 and 213 dated March 2, 2005, ASI billed First Choice $25,600 for the skid plates, as agreed.

d)     First Choice has refused to pay ASI Invoices 212 and 213.

In addition, ASI incorporates its Initial Disclosures and, pursuant to Fed. R. Civ. P. 33(d) will produce business records from which a portion of the answer to this Interrogatory may be derived or ascertained. ASI's witnesses to the above-described events include witnesses a, b, c, d and e identified in ASI's Response to Interrogatory No. 8.

**INTERROGATORY NO. 7:** Please identify and describe in full and complete detail every fact, witness and document supporting your claim that FCA violated M.G.L.c. 93A § 11.

**RESPONSE TO INTERROGATORY NO. 7:** ASI incorporates here its entire response to Interrogatory No. 3, including objections.

Page 7 -     PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 8:** Please identify each and every communication, with whom [sic] any ASI employee or agent had with any FCA employee or agent pertaining to the purchase order, the Ford Excursion vehicles or the skid plates, including in your answer each individual's name, business address, the date of the communication, the substance of every communication with each individual, the purpose of each and every comment or communication, and whether such communications were verbal or in writing.

**RESPONSE TO INTERROGATORY NO. 8:** ASI objects as overbroad and unduly

burdensome. Representatives of ASI and First Choice conversed or otherwise communicated

hundreds of times over the many months that passed between First Choice soliciting ASI's bid

on the Ford Excursion project and when First Choice prevented completion of the project by

removing the unmodified vehicles from the premises where the work was being performed. To

describe each and every communication in detail is clearly unduly burdensome. ASI also objects

as vague and ambiguous in that "the purchase order" and "the skid plates" are undefined and the

use of the phrase "with whom" renders the request nonsensical.

ASI assumes for the purposes of this response that defendant's reference to "the purchase

order" means First Choice Purchase Order No. 774, dated October 12, 2004, to Armor Systems

International, Inc., and that defendants reference to "the skid plates" means the skid plates for

Chevrolet Suburbans that First Choice ordered, received and accepted pursuant to First Choice

Purchase Order Nos. 939 and 1085.

Subject to and without waiving those objections, ASI responds as follows: Pursuant to

Fed. R. Civ. P. 33(d) it will produce business records, including email, from which parts of the

answer to this Interrogatory may be derived or ascertained. In addition, at least the following

ASI employees had one or more conversations with someone representing First Choice regarding

one or more of the matters listed in Interrogatory No. 8:

a.    Jim Henry, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660

(360) 993-5181. From late summer 2004 through March 2005 Mr. Henry had numerous conversations with Edward Dovner, Ryan Dovner, Jim Merlo, Bob DePinna, and Kim (Mr. Dovner's assistant) from First Choice regarding many aspects of the Ford Excursion project including but not limited to ASI's expertise in the design and installation of armor kits; the failure of First Choice to provide supervision, coordination, space or the manpower it had committed to provide for the project; changes to the armor kits that First Choice demanded and the impact of those changes; status of the project; initial inspection of the first two vehicles by a representative of Kellogg Brown & Root ("KBR"); KBR's response to the first two vehicles shipped to it in Texas; admission by First Choice that in rejecting the first two vehicles, KBR did not have any issues with the armor kits or the installation of the armor.

b.    Brian Cain, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660

(360) 993-5181. During February and March 2005 Mr. Cain spoke with one or more First Choice representative, most often Ryan Dovner and/or Jim Merlo, on essentially every working day regarding many aspects of the Ford Excursion project including but not limited to the failure of First Choice to provide supervision, coordination, space or the manpower it had committed to provide for the Ford Excursion project; changes to the armor kits that First Choice demanded and the impact of those changes; status of the project; installation of the armor kits for the project.

c.    Colin Henry, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660

(360) 993-5181. During February and March 2005 Colin Henry spoke with one or more First Choice representative, most often Ryan Dovner and/or Jim Merlo, on essentially every working day regarding many aspects of the Ford Excursion project; including but not limited to First Choice's failure to provide supervision, coordination, space or the manpower it had committed to

Page 9 -    PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES

provide for the project; changes to the armor kits that First Choice demanded and the impact of those changes; status of the project; installation of the armor kits for the project.

    d.      Richard Daniels, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. During February and March 2005 Mr. Daniels spoke with one or more First Choice representative, most often Ryan Dovner and/or Jim Merlo, on essentially every working day regarding many aspects of the Ford Excursion project including installation of the armor kits for the project; including but not limited to First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the project.

    e.      Jeff Brown, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. During February and March 2005 Mr. Brown spoke with one or more First Choice representative, most often Ryan Dovner and/or Jim Merlo, on essentially every working day regarding many aspects of the Ford Excursion project including installation of the armor kits; including but not limited to First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the project.

    f.      Bob Marciano, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181: In the summer and fall of 2004 Mr. Marciano spoke occasionally with Edward Dovner of First Choice regarding the Ford Excursion project, in particular regarding negotiations over business terms and changes First Choice demanded.

    g.      Charles Colverhouse, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181: In the summer and/or fall of 2004 Mr. Colverhouse spoke occasionally with Edward Dovner of First Choice regarding the Ford Excursion project, in particular regarding business terms and changes First Choice demanded.

h.     Terry Billedeaux, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660

(360) 993-5181: In the summer, fall and winter of 2004 Mr. Billedeaux spoke occasionally with

Edward Dovner of First Choice regarding the Ford Excursion project, in particular regarding

business terms, changes First Choice demanded and the parties continuing business relationship.

**INTERROGATORY NO. 9:** Please describe fully and in complete detail how ASI prepared to install the armor kits on the Ford Excursions, specifically including the procedures ASI had in place.

**RESPONSE TO INTERROGATORY NO. 9:** ASI objects as vague, ambiguous and

overbroad in that "prepared to install" is not defined. Subject to and without waiving those

objections, ASI responds as follows:

As part of the Ford Excursion project for First Choice, ASI purchased a Ford Excursion

and used it to pattern an armor kit. All of the armor pieces of the original kit were test-fitted in

ASI's Excursion prior to duplication. At First Choice's instruction, the vehicle that ASI's kit

was patterned after included a luxury trim package. First Choice, however, purchased 16 base

trim models. As a result, some of the armor pieces had to be altered to fit First Choice's base

model vehicles. The kits needed to armor the first two vehicles were on site before ASI's

installation team arrived on site. Each part of the kits was numbered according to its location in

the vehicle to facilitate ease of installation.

**INTERROGATORY NO. 10:** Please identify all ASI employees, agents, managers, or other personnel that assisted in the production of the armor kits for the Ford Excursions, including all details of hours and activities they devoted.

**RESPONSE TO INTERROGATORY NO. 10:** ASI objects to the Interrogatory as

vague, ambiguous, overbroad and not reasonably calculated to lead to the discovery of

Page 11 -     PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES

admissible evidence. The phrase "other personnel" is undefined and unclear. The phrase

"assisted in the production" is undefined and unclear. For purposes of this response ASI

interprets "assisted in the production" to mean "actively involved in the manufacture." Subject

to and without waiving those objections, no ASI employee, agent or manager was actively

involved in the manufacture of the armor kits.

> **INTERROGATORY NO. 11:** Please describe fully and in complete detail how
> FCA "failed to arrange for adequate work and storage space" alleged in paragraph
> 21 of plaintiff's complaint.

**RESPONSE TO INTERROGATORY NO. 11:** ASI was responsible for providing

armor protection kits and assisting with the installation of the kits on the first four vehicles. First

Choice's President, Edward Dovner, agreed that First Choice would provide adequate space for

the installation team's work. Mr. Dovner represented that First Choice had procured such space

at Rodman Ford in Foxboro, MA. When ASI's installation team arrived in Foxboro, however,

they discovered that the space at Rodman Ford allocated to the project was clearly inadequate for

the job. As a result, the installation team was forced into insufficient and cramped work quarters

that hindered and delayed its work.

> **INTERROGATORY NO. 12:** Please describe fully and in complete detail the
> supplies and materials that ASI brought to Foxboro, Massachusetts in February of
> 2005 or thereafter to complete the project.

> **RESPONSE TO INTERROGATORY NO. 12:**

> a)    220 welders

> b)    Plasma cutter

> c)    3 steel grinders

Page 12 -    PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
            INTERROGATORIES

d)      Electric and mechanical caulking guns

e)      4 extension cords

f)      2 welding hoods

g)      3 cases of tool sets (sockets, hammers, etc.)

h)      2 cordless drills

i)      1 corded drill

j)      1 Husky air saw and die grinder

k)      Impart wrench and ratchet driver

l)      Portable lighting system

m)      16 kits of armor—nuts, bolts, bonding adhesives, rear bulkheads, door pillars,

firewall armor, skid plates, nerf bars, armored glass, window lift actuators, etc.

n)      16 roof caps

o)      8 steel skid plates-Suburban

p)      16 fuel tanks with foam inserts and external coatings

q)      16 brush guards for front grill

r)      3 ASI lower grill armor panels

**INTERROGATORY NO. 13:** Please identify and describe in detail what "specifications" ASI is referring to in paragraph 24 of its complaint.

**RESPONSE TO INTERROGATORY NO. 13:** ASI is referring to the specifications

provided to it by First Choice on or about August 2004 which First Choice represented had been

provided to it by Kellogg Brown & Root, the end customer. ASI will produce a copy of the

specifications to which it refers.

Page 13 -     PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF INTERROGATORIES

**INTERROGATORY NO. 14:** Itemize by source, date and amount all expenses, incurred by ASI or any person or entity, for which ASI seeks recovery in this case.

**RESPONSE TO INTERROGATORY NO. 14:** Pursuant to Fed. R. Civ. P. 33(d) ASI

will produce business records, including expense reports, receipts, check stubs and

accompanying invoices or statements, from which the answer to this Interrogatory may be

derived or ascertained.

**INTERROGATORY NO. 15:** Please identify with specifying [sic] all documents (excepting pleadings and discovery requests) within your possession, custody or control that refer to FCA and/or evidence or establish the FCA's asserted liability hereunder, including without limitation all documents described generally section b, "Category & location of documents" of ASI's Rule 26(a)(1) disclosure.

**RESPONSE TO INTERROGATORY NO. 15:** ASI objects to the Interrogatory as

vague, ambiguous and overbroad because use of the word "specifying" renders the request

nonsensical. For purposes of its response to this interrogatory, ASI will assume that First Choice

is requesting it to identify documents relevant to this dispute. Subject to those objections,

pursuant to Fed. R. Civ. P. 33(d) ASI will produce business records from which the answer to the

Interrogatory may be derived or ascertained, including purchase orders, invoices, email and other

documents relating to FCA's liability claimed in the complaint.

**INTERROGATORY NO. 16:** Identify all insurance carriers providing general or product liability coverage to ASI for property damage or other losses occurring between October 1, 2004 and the present.

**RESPONSE TO INTERROGATORY NO. 16:** ASI objects to the Interrogatory as

overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject

to and without waiving that objection, ASI responds that it is unaware of any insurance policy

Page 14 -    PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
             INTERROGATORIES

that could potentially provide it coverage for any of the claims First Choice has asserted against

ASI in this matter.

DATED:  August 30, 2005.

Respectfully submitted,

ARMOR SYSTEMS INTERNATIONAL, INC.
By its attorneys,

Steven T. Lovett (OSB No. 91070)
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland OR  97204
(503) 224-3380

and

Anthony A. Scibelli (BBO #556507)
SCIBELLI, WHITELEY AND
STANGANELLI, LLP
50 Federal Street, Fifth Floor
Boston MA  02110
(617) 227-5725

Page 15 -    PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
             INTERROGATORIES

## VERIFICATION

State of Oregon      )
                        ) ss.
County of Multnomah    )

I, Randy L. Wadsworth, being first duly sworn on oath, depose and state that I am

authorized representative or managing agent of a party in the above entitled case, that I have read

the foregoing interrogatories, that I know the contents thereof, and that the answers are true,

accurate and complete to the best of my knowledge.

Randy L. Wadsworth
President and Chief Executive Officer
Armor Systems International, Inc.

SUBSCRIBED AND SWORN to before me this 30th day of August, 2005.

Peggy R. Hall
Notary Public in and for Oregon
My commission expires 11 | 21 | 2008

OFFICIAL SEAL
PEGGY R. HALL
NOTARY PUBLIC-OREGON
COMMISSION NO. 385601
MY COMMISSION EXPIRES NOVEMBER 21, 2008

Page 16 -     PLAINTIFF ARMOR SYSTEMS' RESPONSE TO FIRST SET OF
                 INTERROGATORIES

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **PLAINTIFF ARMOR SYSTEMS'**

**RESPONSE TO FIRST SET OF INTERROGATORIES** on the following named person on

the date indicated below by

      ☒  mailing with postage prepaid

      ☐  hand delivery

      ☒  facsimile transmission

      ☐  overnight delivery

      ☐  email

      ☐  notice of electronic filing using the Cm/ECF system

to said person a true copy thereof, contained in a sealed envelope, addressed to said person at his

last-known address indicated below.

      David M. O'Connor
      O'Connor & Associates, LLC
      100 State Street, 4th Floor
      Boston, MA 02109

           Attorney for Defendant First Choice Body Armor & Equipment, Inc.

DATED:  August 30, 2005.

           STOEL RIVES LLP

           STEVEN T. LOVETT
           OSB No. 91070
           Telephone:  (503) 224-3380

           Attorneys for Plaintiff Armor Systems International,
             Inc.

Portlnd2-4524399.3 0060162-00003

# EXHIBIT "C"

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARMOR SYSTEMS INTERNATIONAL, INC., a Washington corporation,<br><br>        Plaintiff,<br><br>v.<br><br>FIRST CHOICE BODY ARMOR & EQUIPMENT, INC., a Massachusetts corporation,<br><br>        Defendant. | Civil Action No. 05-10967 RCL<br><br>**ARMOR SYSTEMS INTERNATIONAL, INC.'S INITIAL DISCLOSURES PURSUANT TO FRCP 26 (a)(1) AND LOCAL RULE 26.2(A)** |

Pursuant to Federal Rule of Civil Procedure 26(a)(1) and Local Rule 26.2(A) plaintiff Armor Systems International, Inc. ("ASI") hereby provides the following initial disclosures:

**A.    Individuals likely to have discoverable information.**

A1.    Jim Henry, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. Areas of testimony: ASI's involvement in the project with First Choice Body Armor and Equipment, Inc. ("First Choice") to armor 16 Ford Excursions (the "Project"); ASI's expertise in the design and installation of armor kits; the failure of First Choice to provide supervision, coordination, space or the manpower it had committed to provide for the Project; initial inspection of the first two vehicles by a representative of Kellogg Brown & Root ("KBR"); KBR's response to the first two vehicles shipped to it in Texas; admission by First Choice that in

rejecting the first two vehicles, KBR did not have any issues with the armor kits or the installation of the armor.

A2.    Brian Cain, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. Areas of testimony: Installation of the armor kits for the Project; First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the Project; First Choice's removal of eight unmodified Ford Excursions from the worksite; First Choice's instructions to its first upholstery installer on the Project.

A3.    Colin Henry, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. Areas of testimony: Installation of the armor kits for the Project; First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the Project; First Choice's removal of eight unmodified Ford Excursions from the worksite.

A4.    Richard Daniels, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. Areas of testimony: Installation of the armor kits for the Project; First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the Project; First Choice's removal of eight unmodified Ford Excursions from the worksite; reaction of the KBR inspector after inspecting the first two vehicles in Massachusetts.

A5.    Jeff Brown, c/o ASI, 110 Columbia Street, Vancouver, WA, 98660 (360) 993-5181. Areas of testimony: Installation of the armor kits for the Project; First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the Project; First Choice's removal of eight unmodified Ford Excursions from the worksite.

A6.    Bob LeBlanc, c/o Rodman Ford, Brockton, MA, (508) 543-3333. Areas of testimony: Installation of the armor kits for the Project; First Choice's failure to provide supervision, coordination, space or the manpower it had committed to provide for the Project; First Choice's decision to remove eight unmodified Ford Excursions from the Rodman Ford site.

A7.    Brett Rodman, c/o Rodman Ford, Brockton, MA, (508) 543-3333. Areas of testimony: Discussions with First Choice regarding the Project, particularly Rodman Ford

2

providing space for the installation work and mechanics to assist in the installation of the armor kits; First Choice's decision to remove eight unmodified Ford Excursions from the Rodman Ford site.

A8.     Renee Bolee, Rehoboth, MA, (508) 252-3331. Areas of testimony: Instructions from First Choice re installation of the upholstery on the Ford Excursions in connection with the Project.

A9.     Spear Pittman, Houston, TX, (832) 654-2158. Areas of testimony: Quality of upholstery on first two Ford Excursions when they were delivered to KBR.

A10.    John Orlandi, (401) 639-7868. Areas of testimony: KBR's inspection in Massachusetts of the first two Ford Excursions.

A11.    John Dickmeier, KBR Houston, TX, (713) 753-5198. Areas of testimony: KBR's inspection in Texas and reasons for rejection of the first two Ford Excursions; KBR's reinspection after Spear Pittman reupholstered truck No. 1; KBR's acceptance of truck No. 1 and clearance to ship overseas; KBR's acceptance of the Ford Excursions with ASI armor protection kits; current status of the Project.

A12.    Luke Albrecht, KBR Houston, TX, (713) 753-3027. Areas of testimony: KBR's acceptance of the Ford Excursions with ASI armor protection kits; current status of the Project.

A13.    Jim Merlo, c/o First Choice Armor, Brockton, MA. Areas of testimony: Installation of the armor kits for the Project; appearance and condition of the first two Ford Excursions shipped to KBR; current status of the Project.

A14.    Bob Depinna, c/o First Choice Armor, Houston, TX, (281) 667-8435. Areas of testimony: The reasons the first two Ford Excursions were initially rejected by KBR; quality of initial upholstery job on the first two vehicles delivered to KBR in Texas.

3

**B.**   **Category and location of documents.**

B1.   Documents related to ASI's acquisition of materials and services in connection with the Project.

B2.   Communications between the parties relating to the Project.

B3.   Documents related to ASI's out-of-pocket expenses and the value of labor lost to it as a result of First Choice's wrongful actions.

B4.   Internal communications relating to the Project.

All documents in the categories listed above are available at ASI.

**C.**   **Damages computations.**

C1.   First Choice owes ASI $333,000 for the armor protection kits ordered via First Choice's Purchase Order No. 774 and billed via ASI's Invoice No. 203. Purchase Order No. 774 was for $444,000. First Choice paid a 25% deposit of $110,900. The balance due and owing, therefore, is $333,000.

C2.   First Choice is liable to ASI for the of cost of keeping four employees in Massachusetts for six weeks longer than would have been necessary had First Choice performed its obligations, including its obligations to provide labor, a suitable premises and coordination over the Project. The $80,000 estimate for those costs is based on actual expense records for travel, hotel, food, etc. and lost labor to ASI.

C3.   First Choice owes ASI $25,600 for the product ordered via First Choice Purchase Order Nos. 939, 1085 and billed via ASI Invoice Nos. 212, 213. The products ASI delivered in response to the Purchase Orders were accepted by First Choice but First Choice has failed to pay for them.

C.4.   ASI also seeks enhanced damages based on First Choice's unfair and deceptive trade practices. The amount of enhanced damages to which ASI is entitled will be developed during discovery and at trial.

4

**D.    Insurance agreement.**

Not applicable

**ASI reserves the right to amend or supplement these disclosures.**

DATED:  June 21, 2005.

ARMOR SYSTEMS INTERNATIONAL, INC.
By its attorneys,

Steven T. Lovett, *Pro Hac Vice*
(OSB No. 91070)
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland OR  97204
(503) 224-3380

and

Anthony A. Scibelli (BBO No. 556507)
SCIBELLI, WHITELEY AND
STANGANELLI, LLP
50 Federal Street, Fifth Floor
Boston MA  02110
(617) 227-5725

5

# EXHIBIT "D"

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05 CV 10967 RCL

ARMOR SYSTEMS                    )
INTERNATIONAL, INC.              )
                                 )
          Plaintiff,             )
                                 )
v.                               )
                                 )
FIRST CHOICE BODY ARMOR &        )
EQUIPMENT, INC.                  )
                                 )
          Defendant.             )
_____)

### AUTOMATIC DISCLOSURE

First Choice Armor & Equipment, Inc. (hereinafter, "FCA"),

by and through its undersigned counsel, O'Connor & Associates,

LLC, submits this Automatic Disclosure pursuant to Rule 26(a)(1)

of the Federal Rules of Civil Procedure and Rule 26.2 of the

Local Rules for the District of Massachusetts.

### A.    INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

    1.    Edward Dovner - FCA Project Coordinator
          First Choice Armor & Equipment, Inc.
          764 N. Main Street
          Brockton, MA 02301

    2.    James Merlo - Employee of FCA
          First Choice Armor & Equipment, Inc.
          764 N. Main Street
          Brockton, MA 02301

3.    Ryan Dovner - Project Manager
      First Choice Armor & Equipment, Inc.
      764 N. Main Street
      Brockton, MA 02301

4.    Brian Cane - Employee of ASI
      Armor Systems International, Inc.
      110 Columbia Street
      Vancouver, WA 98660

5.    Jeff Brown - Employee of ASI
      Armor Systems International, Inc.
      110 Columbia Street
      Vancouver, WA 98660

6.    Richard (last name unknown) - Employee of ASI
      Armor Systems International, Inc.
      110 Columbia Street
      Vancouver, WA 98660

7.    Collin Henry - Employee of ASI
      Armor Systems International, Inc.
      110 Columbia Street
      Vancouver, WA 98660

8.    James Henry - President of ASI
      Armor Systems International, Inc.
      110 Columbia Street
      Vancouver, WA 98660

9.    Edward Menteer - Vice President of ASI
      Armor Systems International, Inc.
      110 Columbia Street
      Vancouver, WA 98660

10.   Rodman Ford - Various unidentified personnel
      53 Washington Street
      Foxboro, MA 02035

11.   Anne Sullivan - Employee of FCA
      First Choice Armor & Equipment, Inc.
      764 N. Main Street
      Brockton, MA 02301

12.  Randy Wadsworth - Employee of ASI
     Armor Systems International, Inc.
     110 Columbia Street
     Vancouver, WA 98660

13.  Robert Marciano - Employee of ASI
     Armor Systems International, Inc.
     110 Columbia Street
     Vancouver, WA 98660

14.  Terry Billedeau - Employee of ASI
     Armor Systems International, Inc.
     110 Columbia Street
     Vancouver, WA 98660

15.  Unspecified Representative
     Rhino Linings of New England
     P.O. Box 470
     Taunton, MA 02780

## B.   DOCUMENTS

1.   FCA Purchase Order No. 774 dated 10/12/04

2.   E-mail from Randy Wadsworth from ASI to FCA, Anne
     Sullivan dated 10/18/04

3.   ASI Invoice No. 203 dated 10/13/04

4.   E-mail from Bob Marciano of ASI to FCA, Anne Sullivan
     dated 10/22/04

5.   E-mail from Terry Billedeau from ASI to Anne Sullivan
     of FCA dated 10/19/04

6.   Fax of FCA Purchase Order No. 774 with revisions dated
     10/13/04

7.   FCA fax to Terry Billedeau at ASI dated 10/12/04

8.   ASI letter from Randy Wadsworth to FCA dated 10/13/04

9.   Schedule A Vehicle Armoring Specifications

10.   Numerous invoices or payment records

11.   Correspondence among counsel dated October 29, November 23, 2004, and February 1, February 2, March 31, May 5 and May 6, 2005

12.   Miscellaneous ASI promotional materials.

## C.   **DAMAGES**

Defendant states that its damages are the amount of the $110,900 deposit paid; roughly $75,000 for out-of-pocket expense (still being assembled and subject to revision) to remedy ASI's product and performance defects; untabulated expense incurred in having another vendor finish the project and as yet uncalculated loss of business goodwill.

## D.   **INSURANCE AGREEMENTS**

Not applicable.

FCA agrees to produce all non-privileged documentation set forth upon request.  FCA is currently searching its records to develop additional documentation and will supplement this disclosure seasonably.

FIRST CHOICE ARMOR &
EQUIPMENT, INC.
By its attorney,

David M. O'Connor
BBO No. 544166
O'CONNOR & ASSOCIATES, LLC
100 State Street, 4th Floor
Boston, MA   02109
(617) 723-7201

DATED: June 7, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was
served by mail upon all counsel of record for each party on June
7, 2005.

David M. O'Connor